Case 4:22-cv-04532 Document 15 Filed on 05/01/24 in TXSD Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
May 01, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Hector John Martinez, § § § *Plaintiff,* § § § v. § § Kilolo Kijakazi, § Acting Commissioner of Social § Security Administration,[1] § § *Defendant.* § | Case No. 4:22-cv-04532 |

# **MEMORANDUM AND ORDER**

This is an appeal from an administrative ruling denying disability benefits. The case was transferred to the undersigned judge upon the parties' consent. Dkt. 4, 12, 14. After carefully considering the parties' briefs, Dkt. 8, 10, 11, the administrative record, Dkt. 3, and the applicable law, the Court denies Plaintiff Hector John Martinez's motion for summary judgment (Dkt. 7) and grants Defendant Kilolo Kijakazi's request to affirm the denial of benefits.

---

[1] Although Martin O'Malley became the Commissioner of Social Security Administration on December 20, 2023, no request to substitute him as Defendant has been filed.

## Background

For fourteen years, Martinez worked in various positions as a porter, water meter reader, vending machine repairer, air conditioning unit assembler, and bus driver. *See* R.29, 59-61, 62-63, 358, 386-92. In the summer of 2020, Martinez began experiencing dizzy spells, vision problems, and hearing loss, impeding his ability to drive. R.63-67. He has not worked since. R.24, 59, 63-64, 312, 320, 323, 325, 356.

According to Martinez, he suffers from chronic obstructive pulmonary disease ("COPD"), asthma, diabetes, high blood pressure, high cholesterol, vision problems, acid reflux, and gastroesophageal reflux disease ("GERD"). R.64-74, 356. To date, Martinez has been diagnosed with the following physical medical conditions: degenerative disc disease of the lumbar and cervical spine; disc herniation; COPD; asthma; diabetes mellitus with neuropathy; hypertension; hyperlipidemia; GERD; gastritis; colitis; hiatal hernia; splenectomy; hepatomegaly; fatty liver; transient loss of vision; cataracts; dermatitis; restless leg syndrome; sleep apnea; Meniere's disease; left flank pain; left upper quadrant pain; decreased sensation of foot; sensorineural hearing loss ("SNHL"); and bilateral tinnitus, among others. R.24-25, 491, 502, 524, 598, 614, 631, 723, 795, 809, 813, 819, 840, 842, 874, 890, 1025, 1037, 1091, 1099.

Martinez filed for social security benefits under Title II and Title XVI of the Social Security Act, claiming a disability onset date of September 2, 2020. R.21, 175, 320, 356. After his claim was denied, Martinez obtained a hearing before an administrative law judge ("ALJ"). *See* R.201, 203.

At the hearing, Martinez testified he suffered a transient loss of vision in July 2020 from which he has not fully recovered. R.64; *see* R.540, 556. He described regularly experiencing sudden blurred vision in his right eye caused by large floaters, impairing his depth perception and his ability to see large objects. R.64-66. He explained that his depth perception is compromised to a lesser extent in his left eye. R.66. Martinez reported that his vision problems tend to last all day and force him to stay home. *Id.* Otherwise, he is able to drive himself to the store. R.71.

Martinez also reported experiencing hearing loss. He explained that he cannot hear certain frequencies and sometimes cannot carry a conversation with others, particularly elementary-aged children. R.64, 67; *see* R.1010.

In addition, Martinez expressed feeling back, neck, and foot pain, as well as numbness and tingling in his right foot. R.67-69, 74. He asserted that the problems with his right foot limit him to standing for only twenty to thirty minutes, but he can complete household chores and maintain personal care without incident. R.68-69, 74. And while he uses a cane to "keep the weight

off [his] legs" and prevent a fall, Martinez conceded that the cane was recommended—not prescribed. R.70.

Martinez also described having difficulty breathing; being unable to reach overhead on his left side due to neck pain; and experiencing blackouts and dizziness. R.64, 72, 73, 75-76. His blackouts, coupled with vision problems, render him unable to drive on a regular basis. R.73.

Before concluding the hearing, the ALJ referred Martinez for an ophthalmological consultative examination to assess the nature and extent of his visual problems. R.83. The ALJ considered and incorporated those findings in his decision, *see* R.24 (citing R.1098, 1099), along with records for medical visits that occurred after the hearing, *see* R.25 (citing R.1086); R.28.

The ALJ found that Martinez met the insured status requirements and had not engaged in substantial gainful activity since September 2, 2020. R.24. The ALJ also concluded that Martinez has several severe physical impairments: degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine; COPD; asthma; diabetes mellitus with neuropathy; hearing loss; and tinnitus. *Id.* Upon analyzing Martinez's medical records, however, the ALJ concluded that his hypertension, hyperlipidemia, GERD, gastritis, colitis, hiatal hernia, splenectomy, hepatomegaly, fatty liver, vision problems, dermatitis, restless leg syndrome, sleep apnea, COVID-19, and Meniere's disease are not severe. R.24-25.

4

After finding that Martinez's impairments do not meet or medically equal a listed impairment, the ALJ turned to formulating Martinez's residual functional capacity ("RFC"). In addition to detailing medical records and function reports, the ALJ evaluated the persuasiveness of the state agency consultants' medical opinions. *See* R.26-29. Based on those determinations, the ALJ concluded that Martinez can perform light work with the following limitations:

> no climbing ladders, ropes, or scaffolds. He can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. He can occasionally reach overhead with the left upper extremity. He can have occasional exposure to concentrated fumes, odors, dusts, gases, mists, and environments with poor ventilation as described in the SCO. He can have exposure to moderate noise and vibration.

R.26. Based on this RFC, the ALJ found that Martinez can perform his past relevant work as a water meter reader "as it was actually performed by [Martinez] and generally performed in the national economy." R.29. As a result, the ALJ determined that Martinez does not qualify as disabled under the Social Security Act. R.30.

Martinez appealed the ALJ's determination to the Social Security Appeals Council, which denied review. R.1. This appeal followed. Dkt. 1.

## **Legal Standard**

This Court reviews the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial

5

evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (per curiam) (internal quotation marks omitted).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (internal quotation marks omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I. Legal framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is … disabled: (1) whether the claimant is presently

6

performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (footnote omitted) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Before moving from step three to four, the ALJ determines the claimant's RFC, which is used to evaluate steps four and five. *Id.* at 776 n.2 (quoting 20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). At the last step, the burden shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54. The Commissioner meets this burden by identifying potential alternative jobs existing in significant numbers in the national economy. *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(a). The burden then "shifts back to the claimant to prove that he is unable to perform the alternate work." *Fraga*, 810 F.2d at 1302.

## II. Substantial evidence supports the ALJ's RFC formulation.

Martinez contends that the RFC determination is unsupported. Dkt. 8 at 9. Specifically, Martinez argues that the ALJ failed to rely on a medical opinion. *Id.* at 6-7. He further claims that the ALJ substituted his lay opinion for that of medical experts by including stricter limitations than those found by state agency consultants. *Id.* at 9-10; Dkt. 11 at 4. Martinez lastly alleges that the record warrants a more limited RFC. Dkt. 8 at 11.

On the other hand, the Commissioner argues that substantial evidence supports the RFC determination. Dkt. 10 at 2. The Commissioner asserts that the ALJ considered the state agency consultants' medical opinions when forming the RFC and was not required to adopt or mirror any medical opinion. *Id.* at 4. And contrary to Martinez's allegations, the Commissioner maintains that the ALJ gave specific explanations for the additional restrictions in the RFC. *Id.* at 8. Based on the totality of the record, and as detailed below, the Court concludes that the RFC adequately accounts for all of Martinez's restrictions and impairments.

### A. The ALJ properly formulated the RFC by considering the entire record.

An RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "Under the regulations and our case law, the determination of residual functional capacity is the sole responsibility

8

of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) (per curiam); 20 C.F.R. §§ 404.1546, 416.946; *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). To formulate the RFC, the ALJ examines all medical evidence in the record. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on evidence of his or her claimed medical conditions … [and] may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (per curiam) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). But "ALJs are no longer required to give controlling weight to a treating physician's opinion," much less "adopt a specific physician's assessment." *Miller v. Kijakazi*, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (per curiam) (quoting *Webster*, 19 F.4th at 718).

    1.    <u>The RFC partially relies on medical opinions.</u>

Martinez claims that the RFC is unsupported by a single medical opinion, Dkt. 8 at 2, but the record shows otherwise. As Martinez acknowledges, the ALJ considered and evaluated the opinions of the state agency consultants. *Id.* at 9. The ALJ noted that at the initial review stage, Dr. L. Sklar, opined that Martinez could lift or carry 20 pounds occasionally and 10 pounds frequently; could stand and/or walk for a total of about 6 hours

9

in an 8-hour workday; could sit for a total of about 6 hours in an 8-hour workday; and had no limitations on his ability to push or pull the same weight that he could lift or carry. R.28 (citing R.93-94). Dr. Sklar determined that Martinez could occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. *Id.* (citing R.94-96). At the reconsideration stage, Dr. Dorothy Leong "concurred with most of Dr. Sklar's opinion but found no postural restrictions." R.29 (citing R.131-35).

The ALJ concluded that these opinions were partially persuasive, and the RFC reflects this. The ALJ observed that the opinions were "consistent with and supported by the medical evidence available at the hearing level," demonstrating that Martinez "had some limitations in functioning but not to the degree he alleged during the relevant period." R.29. Accordingly, the ALJ incorporated into the RFC certain limitations identified by Dr. Sklar, restricting Martinez to "light work," defined in 20 CFR §§ 404.1567(b) and 416.967(b) as being able to lift up to 20 pounds with frequent lifting or carrying of objects weighing up to 10 pounds and requiring a significant amount of walking or standing, as well as limiting him to "occasional exposure to concentrated fumes, odors, dusts, gases, mists, and environments with poor ventilation." *Compare* R.26, *with* R.93-95.

> 2. The ALJ did not commit reversible error by including more restrictions in the RFC.

According to Martinez, the problem concerns the ALJ's decision to include a few additional limitations in the RFC that departed from the state agency consultants' opinions. The ALJ "added postural, manipulative, and environmental limitations based on hearing testimony and hearing level evidence." R.29. While Dr. Leong did not assess postural limitations, the ALJ concluded that Martinez could never climb ladders, ropes, or scaffolds, and only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl—a step above the restrictions recognized by Dr. Sklar. *Compare* R.26, *with* R.93-96, *and* R.131-33. The ALJ also limited Martinez to occasionally reaching overhead with the left upper extremity. R.26. Lastly, the ALJ restricted Martinez to exposure to moderate noise and vibration. *Id.*

Martinez insists that the ALJ erred by failing to explain how these additional limitations were reached. That position is incorrect. The ALJ's opinion explained that the postural limitations were added to accommodate for "residual difficulties" resulting from "the combination of [Martinez's] impairments." R.28. The manipulative limitation of "occasional overhead reaching with left upper extremity" was included because of "his neuropathy and cervical spine issues." *Id.* Martinez's limitation to "occasional exposure to concentrated dusts, fumes, odors, gases, mists, and environments with poor

11

ventilation [w]as a precautionary measure for his COPD and asthma." *Id.* And due to his tinnitus, Martinez "can have moderate exposure to moderate noise and vibration." *Id.*

The record and the holdings in similar cases further support the ALJ's inclusion of those additional restrictions. For example, Martinez has degenerative disc disease and COPD, which provide a basis to preclude him from climbing ladders, ropes, and scaffolds, and to limit him to occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. *See* R.67, 94, 499, 614, 621, 643, 646, 651, 693, 739; *see also Cox v. Astrue*, 2012 WL 3046048, at *1-2, 10 (S.D. Tex. July 24, 2012) (upholding similar RFC limitations for a claimant diagnosed with degenerative disc disease and COPD). The record—including Martinez's own testimony—also indicates that Martinez's left upper extremity is limited to reaching overhead occasionally due to neck pain from degenerative disc disease in his cervical spine. *See* R.75-76, 621; *see also Morehead v. Colvin*, 2017 WL 3485509, *5 (M.D. La. Aug. 14, 2017) (claimant's "neck and back issues will likely preclude overhead work"). Furthermore, Martinez's mild to severe "hearing loss and tinnitus support a limitation to work in at most a moderate noise environment." *See Teixeira v. Comm'r, SSA*, 2022 WL 3130859, at *9 (E.D. Tex. July 12, 2022), *adopted by* 2022 WL 3107856 (E.D. Tex. Aug. 4, 2022); R.67 (Martinez's description of his hearing loss); R.889, 892, 1010, 1028.

More fundamentally, "[f]ederal courts have rejected the notion that an ALJ commits reversible error merely by including more restrictions in [his] RFC assessment than the state agency doctors." *Kashanchi v. Saul*, 2020 WL 5823154, at *19 (S.D. Tex. Sept. 11, 2020) (citing, *inter alia*, *Martin v. Colvin*, 2015 WL 2114506, at *5 (N.D. Tex. May 5, 2015)), *adopted by* 2020 WL 5819898 (S.D. Tex. Sept. 30, 2020). "Rather, the applicable regulations support that the ALJ was entitled to find the administrative findings partially persuasive and then use those findings, together with other relevant record evidence, in making [his] RFC determination." *See Wills v. Kijakazi*, 2023 WL 4015174, at *3 (5th Cir. June 14, 2023) (per curiam) (citing 20 C.F.R. § 404.1520c). Findings of partial persuasiveness that favor a claimant, even if erroneous, cannot be prejudicial. *See Kemp v. Kijakazi*, 2023 WL 2249162, at *6 (S.D. Tex. Feb. 27, 2023), *adopted by* 2023 WL 3035372 (S.D. Tex. Mar. 15, 2023).

Here, the RFC is "more limited/favorable than the state agency medical consultants' opinions, and [Martinez] has not identified any medical opinions or objective medical evidence in the record that contradicts the ALJ's RFC finding." *See Myers v. Saul*, 2021 WL 4025993, at *8 (W.D. Tex. Sept. 3, 2021). Substantial evidence supports the RFC.

3. <u>The ALJ did not substitute his opinion for the medical opinion of experts.</u>

Martinez accuses the ALJ of making conclusions based on raw data from an audiology examination. Dkt. 8 at 10-11. He contends that no medical professional reviewed the audiogram and audiological evaluation report, and the ALJ inserted his own interpretation of the diagnostic testing in creating the RFC. *Id.* at 11. The Commissioner does not address this argument. Nevertheless, the contention is meritless.

The ALJ did not "reject[] the medical opinions of … examining doctors … without contradictory evidence from a medical expert of any kind." *See Salmond v. Berryhill*, 892 F.3d 812, 819 (5th Cir. 2018). Instead, the ALJ relied on findings by Sloan Jenkins, AuD, Dr. Steven Wright, Dr. Hannah Evans, and Dr. Kannappan Krishnaswamy. The ALJ referenced Martinez's SNHL and tinnitus diagnoses; his complaint that hearing loss affects his ability to converse with others; his treatment by Dr. Krishnaswamy; and Dr. Jenkins's recommendation that Martinez obtain binaural hearing aids. *See* R.27, 1010, 1013, 1015, 1026, 1029, 1037. The Court cannot reweigh the evidence underlying the ALJ's conclusions. *See Brown*, 192 F.3d at 496.

**B.  The record does not support greater limitations.**

Martinez further disputes the ALJ's decision to refrain from including more restrictions regarding his hearing and his ability to perform the full range

14

of light work. Dkt. 8 at 11-12. The Commissioner responds that the record does not warrant any additional restrictions in the RFC, as reflected by the ALJ's discussion of countervailing evidence. Dkt. 10 at 5-7.

Although Dr. Jenkins documented Martinez's complaints about his difficulty hearing in noisy environments and his tinnitus impacting daily activities, the ALJ noted that Martinez failed to obtain and use binaural hearing aids as recommended by Dr. Jenkins. R.27, 1010. "If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability." *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (per curiam) (citing 20 C.F.R. §§ 404.1530, 416.930). Notably, too, the ALJ noted Martinez's ability to answer all questions at the telephonic hearing without needing anything repeated. R.27, 51-76.

Moreover, Dr. Wright assessed Martinez with *mild* to severe hearing loss, R.1013, justifying "the ALJ's decision not to include any further limitations related to hearing loss in [Martinez's] RFC determination," *see Darcy v. Comm'r of Soc. Sec.*, 2023 WL 2035945 (E.D.N.Y. Feb. 16, 2023) (mild to severe SNHL does not warrant more than limiting exposure to loud noise). Accordingly, the ALJ properly limited Martinez to moderate exposure to noise and vibration. *See Gibson v. Saul*, 2021 WL 7906845, at *5, 12-13 (E.D. La. Oct. 13, 2021) (substantial evidence supported RFC limiting claimant with

tinnitus and "40% hearing loss" to moderate noise environments), *adopted by* 2022 WL 1288770 (E.D. La. Apr. 29, 2022).

In addition, Martinez alleges that he cannot perform light work because of his difficulty maintaining balance, standing, and walking. Dkt. 8 at 12. He notes that he testified about experiencing dizzy spells and using a cane to hold himself up. *Id.* He also claims that he can only "stand in one place with a cane for 20-30 minutes before needing to sit down." *Id.*

The ALJ concluded, however, that these allegations were inconsistent with the evidence. Citing Martinez's testimony and function reports, the ALJ found that Martinez had no issues with personal care and could prepare meals, take care of pets, mow the yard, drive a vehicle, shop in stores, and watch television. R.28, 68-69, 379-81, 404-06. The ALJ also determined that a cane was not medically necessary because there was "minimal objective evidence of either balance or gait issues in treatment notes and there are no notes of cane use at office visits or recommendations to use a cane by a treatment provider." R.28. Physical examinations also revealed Martinez's normal range of motion, normal gait, and lack of neurological deficits. R.27, 641, 743, 755, 805, 873, 940-41. Martinez was even advised to walk for exercise before and after the alleged onset date. R.737, 755, 1023.

As the Commissioner indicates, Martinez relies primarily on his self-reported assertions. *See* Dkt. 10 at 6-7. Such "statements about ... symptoms

16

will not alone establish that [a claimant is] disabled." *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Rather, the ALJ was required to consider Martinez's symptoms in light of objective medical evidence. *See id.* §§ 404.1529(c)(2), 416.929(c)(2). On this record, the ALJ had an ample basis to conclude that no additional restrictions were merited.

## Conclusion

For the foregoing reasons, it is **ORDERED** that Plaintiff Hector John Martinez's Motion for Summary Judgment (Dkt. 7) is **DENIED**.

It is further **ORDERED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

Signed on May 1, 2024, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge